**MYRTLE BEACH PIPELINE CO., Plaintiff,**

**v.**

**The UNITED STATES, Defendant,**

**and**

**Emerson Electric Co., Noticed Third Party Defendant.**

**No. 26–83C.**

United States Claims Court.

Oct. 3, 1984.

C. Ed Harrell, Houston, Tex., for plaintiff.

Jane W. Vanneman, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

R. Kenly Webster, Washington, D.C., for noticed third party defendant. Alexander D. Tomaszczuk and Shaw, Pittman, Potts & Trowbridge, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This case comes before the court on motion by Emerson Electric Co. (Emerson),

third-party defendant, to quash the notice issued to it under RUSCC 14(a)(1) and to dismiss it from this case. Defendant opposes said motion. Plaintiff, Myrtle Beach Pipeline Co., filed no written response to said motion but advised, at oral argument it was neutral as to said motion. Following oral argument, the court concluded that the motion to quash was denied.

As of January 15, 1981, plaintiff and defendant had contracted for the delivery to defendant at the Myrtle Beach Air Force Base (MBAFB) of fuel oil via plaintiff's pipeline. On January 15, 1981, during the course of delivering fuel oil via plaintiff's pipeline to storage tanks on the MBAFB, some 104,396 gallons of fuel oil spilled to the ground and was lost. Defendant's contracting officer rendered a final decision that plaintiff owed the government $128,-453.02, plus interest, for the fuel which was not delivered as required by contract. Before the contracting officer, plaintiff contended it was not responsible for the undelivered fuel under the contract since it was not negligent in the delivery of said fuel. Plaintiff claimed that the fuel was lost because the weld seam on an air eliminator was defective and caused the rupture which led to the fuel leak.[1]

Since plaintiff was contending that the fuel loss was not due to its fault or negligence, but instead was due to faulty equipment supplied by Emerson, defendant "noticed in" Emerson since it "appeared to have an interest" in the pending action, *i.e.*, the suitability of the air eliminator it manufactured for the purpose intended. It is this notice to which Emerson's motion to quash is directed.

■ The key factor in use of the notice provision in RUSCC 14(a)(1) is that the third-party to whom the notice is directed "appear to have an interest" in the proceedings. *Philadelphia Suburban Corp. v. United States*, 211 Ct.Cl. 354, 355 (1976).

If such an appearance of interest is present, a motion to quash such a notice by a third-party and dismiss it from the case will be denied. *See Uram v. United States*, 216 Ct.Cl. 418, 419, 421 (1978); *Puritan Associates v. United States*, 214 Ct.Cl. 735, 736 (1977); *Philadelphia Suburban Corp. v. United States, supra; Midwest Indus. Painting of Florida v. United States*, 1 Cl.Ct. 209, 211–212 (1983). *See also Carrier Corp. v. United States*, 209 Ct.Cl. 267, 269–270, 534 F.2d 250, 251–252 (1976). In *Houston Lighting & Power Co. v. United States*, 205 Ct.Cl. 844, 845 (1974), the Court of Claims allowed a third party's motion to quash and dismissed said third party from the action "with the provision that such dismissal is *with prejudice* to the third-party's right to relitigate any matter determined in these proceedings." Emerson, in this case, was opposed to any dismissal in this case incorporating such a provision. In this case, the court is persuaded that Emerson does have an interest in the question of whether the air eliminator it manufactured and sold to plaintiff for use in installation of the meter on plaintiff's pipeline was defective and thus responsible for the fuel loss which is the subject matter of the action between plaintiff and defendant. The court's finding of such an interest, combined with Emerson's refusal to accept the option of a dismissal with the above proviso convinces the court that the motion to quash should be denied.

■ It is immaterial, when the notice provisions of RUSCC 14(a)(1) are utilized, that the court does not have jurisdiction to grant relief to Emerson, that Emerson can decline to appear, that Emerson cannot be forced to appear and participate in the action, and that Emerson may be nonetheless bound in a later suit in another court by certain determinations made in this case by this court.[2] *See Bowser, Inc. v. United*

---

[1]. Plaintiff, at the request of the Air Force, had a meter installed on its pipeline in 1979. The Air Force paid plaintiff for said installation of a meter, one component of which was an air eliminator tank which was manufactured by a division of Emerson Electric Co. (Emerson).

[2]. Further, Emerson's contention that defendant's claim against plaintiff sounds in tort and is accordingly beyond the jurisdiction of the court is likewise deemed without merit because the court is not asserting jurisdiction over Emerson.

*States,* 190 Ct.Cl. 441, 445, 446, 420 F.2d 1057, 1060–1061 (1970). The notice provision gives Emerson the opportunity, without compulsion to appear in this litigation and protect its interests. *Uram v. United States, supra,* 216 Ct.Cl. at 420. This option rests with Emerson.

■■■ Plaintiff's suit against defendant in this case is brought pursuant to section 609(a)(1) of the Contract Disputes Act of 1978, 41 U.S.C. § 601 (1982) (CDA). Recognizing the impact of the above-cited precedents, Emerson contends these precedents were deprived of their vitality by the passage of the CDA. Emerson argues that this court's jurisdiction over CDA appeals is expressly limited by 28 U.S.C. § 1491(a)(2) to "any claim by or against, or dispute with, a contractor." Since Emerson is not a "contractor" in this case and does not, at the time, have any dispute with plaintiff or defendant, the court does not have subject matter jurisdiction over Emerson and the "notice" issued herein therefore should be quashed. There is nothing in the language of the CDA or its legislative history which suggests in any way that Congress intended to change the existing settled case law relative to third-party practice in the Court of Claims, which settled law has been adopted by this court. *See South Louisiana Grain Services v. United States,* 1 Cl.Ct. 281, 288 (1982). Moreover, as indicated previously, the fact that this court does not have subject matter jurisdiction over Emerson is immaterial when a notice provision is issued.

■■ Plaintiff, like all the third-party defendants who received "notices" in the above-cited case, bemoans the fact that it is unseemly to "pull" Emerson into the litigation when the court has no jurisdiction over it at peril of perhaps being bound, in a later suit in another court, by certain determinations of this court relative to matters in

which it has an interest. However, the answer to this "indignation", lies in the rationale behind the issuance of a notice, which is "the prevention of numerous proceedings and determination on an identical set of facts. Thus it in furtherance of the conservation of judicial time and effort that the Court of Claims determines that notice shall issue where interest is apparent." *Philadelphia Suburban Corp. v. United States, supra,* 211 Ct.Cl. at 355. Further, the Court of Claims in *Bowser, Inc. v. United States, supra,* 190 Ct.Cl. at 446, 420 F.2d at 1060–1061 declared that its third-party practice notice holding was in accord with general principles of law applicable to situations where a person, who has an interest in the subject matter of a litigation and may be injuriously affected by a determination rendered therein and has notice of the pendency of the action, and yet, refuses or neglects to appear and avail himself of his rights to appear and participate nonetheless will be concluded by the judgment and the determinations reached therein even though he was not named as a party to the action. These principles of law, incorporated into the notice provisions of RUSCC 14(a)(1) and applicable case law, may be found, as the Court of Claims observed in the *Bowser* case, *supra,* in many decisions of the Federal courts. There is nothing unfair or unconstitutional about this third-party practice.

Emerson's reliance on *Christy Corp. v. United States,* 181 Ct.Cl. 768, 387 F.2d 395 (1967) is misplaced. In the *Christy* case the involved third party specifically demonstrated, *inter alia,* that it had no interest in the subject matter of the suit that might be used by the government to defeat the claim asserted against it. In this case, Emerson manufactured and sold to plaintiff the allegedly defective instrument that was purportedly responsible for the fuel

---

The issue of the scope of discovery to which Emerson would be subject was also raised at oral argument. While Emerson may not be subject to compliance with the court's discovery rules, *e.g.,* responding to interrogatories, etc.,

because of the court's lack of jurisdiction over it, Emerson is subject to discovery by subpoena and by subpoena duces tecum. *See Uram v. United States,* 216 Ct.Cl. 418, 421 (1978).

loss which is the subject matter of the action in question. Clearly, Emerson has an interest in protecting itself from a subsequent lawsuit because of this allegedly defective device or in defending the quality and workmanship of its product as well as its reputation by establishing that its product was not defective. Further, Emerson's reliance on *Gulf Apparel Corp.*, ASBCA No. 27784, 83–2 BCA ¶ 16,823 is likewise misplaced. In the *Gulf Apparel* case, p. 83,692, the ASBCA refused to implead a third-party because it had no jurisdiction or other authority to implead third parties. Unlike the Claims Court, the ASBCA observed, it has no Rule 14.

 Finally, plaintiff's arguments, at times, confuse the requirements for the issuance of a summons, RUSCC 14(a)(2), and the requirements for the issuances of a notice, RUSCC 14(a)(1). Third-party practice as to issuance of a summons is discussed in *Bowser, Inc. v. United States, supra,* 190 Ct.Cl. at 449, 420 F.2d at 1062, and relates to the power of the court to render judgment against a third party.[3] Thus, plaintiff's reliance on this aspect of *Bowser* decision is misplaced. As to the issuance of a notice, "[t]he only requirement for notice is that the party to be noticed *appears* to have an interest in the proceedings * * *." *Philadelphia Suburban Corp. v. United States, supra,* 211 Ct.Cl. at 355.

For reasons discussed above, and after oral argument, IT IS ORDERED THAT Emerson's motion to quash the notice issued to it and dismiss the action as to it is denied.

**3.** Contrary to the assertion of Emerson's counsel at oral argument, the fact that the court's findings may be binding on Emerson in subsequent litigation is not equivalent to this court rendering a judgment for or against Emerson.

Counsel for Emerson also maintained at oral argument that this court is without jurisdiction to litigate any disputes between Emerson and the plaintiff. The court recognizes this fact, but finds that it is not so litigating. The court is adjudicating the rights of plaintiff and the government. In so adjudicating, the court rec-

ognizes that it will be forced to make some determinations concerning Emerson to render a decision for or against plaintiff or the government. The notice provision provides Emerson with the opportunity to be present when such determinations are made.

