Paul W. BIRD, et al. Plaintiffs,

v.

THE UNITED STATES, Defendant.

No. 01–291C.

United States Court of Federal Claims.

Jan. 18, 2002.

Jerry B. Tompkins, Grand Junction, CO, for plaintiffs.

Jonathan S. Lawlor, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

Dennis H. Markusson, Denver, CO, for Arnie Butler & Co., third-party noticee.

## *ORDER*

MILLER, Judge.

On August 24, 2001, defendant filed Defendant's Motion for Notice to a Third Party pursuant to RCFC 14(a)(1), requesting issuance of a notice to Arnie Butler & Co. ("Butler").[1] On August 29, 2001, the court granted defendant's motion as unopposed, and the Clerk of the Court issued a notice to Butler to appear and "assert any claim or interest you may have in the subject matter of the above-entitled suit." The notice advised Butler that, "[i]f you fail to appear and assert a claim or interest in the subject matter of the suit, your claim or interest therein will forever be barred." On October 26, 2001, Butler's Motion of Butler and Company To Quash Notice was filed. Defendant and Butler filed their response and reply, respectively, after obtaining enlargements of time. Argument is deemed unnecessary.

## FACTS

In this case Paul W. Bird, Paul H. Brenner, and Richard A. Pennington ("plaintiffs") claim that the Government, as grantee, breached a contract for the grant of an easement to extract gravel from real property located in the Colorado River Basin. Prior to the signing of the purported contract, the Government retained Butler to appraise the value of the easement. Relying on the Butler appraisal, the Government set the contract price at $245,000.00 and subsequently executed the contract with plaintiffs. According to plaintiffs, the Government has not paid the contract price.

---

1. Notice was issued to "Arnie Butler & Co." per defendant's motion. Butler's filings refer to itself interchangeably as "Butler & Company" and "Arnold Butler & Company."

Defendant raises as an affirmative defense that the contract with plaintiffs is voidable due to material misrepresentations made by plaintiffs to Butler concerning the potential for gravel extraction from the property, thereby causing Butler to overstate significantly the value of the easement. Alternatively, defendant contends that Butler's overstatement of the value of the easement was a result of Butler's negligence or malpractice. Defendant therefore insists that Butler has an "interest" in this case and that notice is proper under 41 U.S.C. § 114(b) (1994), and RCFC 14(a)(1), reasoning:

> If the Court finds that plaintiffs [made misrepresentations], that would support our material misrepresentation affirmative defense. Were the Court to conclude otherwise, and ultimately rule in favor of plaintiffs upon their breach of contract claim, the Government might pursue a claim against Butler for negligence or malpractice with regard to the appraisal Butler performed for [the Government]. The basis for the Butler appraisal, including Butler's reliance upon any representations by plaintiffs concerning the potential for gravel extraction from the unencumbered property, would likely be among the facts at issue in such a case. Thus, this case falls squarely within the court's rationale for promoting judicial economy and avoiding numerous proceedings and judicial determinations upon identical sets of facts.

Def.'s Br. filed Aug. 24, 2001, at 4. Should the Government file a future suit against Butler, defendant posits that Butler will be bound by findings of fact and conclusions of law reached in this case.

## DISCUSSION

Butler argues that the notice should be quashed because Butler is not an interested party within the meaning of 41 U.S.C. § 114(b) or RCFC 14(a)(1) and because the notice serves no purpose.[2] Butler and defendant agree that the only purpose served by the notice is its alleged preclusive effect on subsequent litigation between them. Butler and defendant disagree as to whether Butler is an interested party, whether any such preclusive effect is afforded by statute or the rules of the Court of Federal Claims, and whether any such preclusive effect violates the Fifth Amendment of the United States Constitution.

Butler charges that the notice violates due process insofar as it purports to bind Butler to a judgment without properly joining it as a party. Butler insists that the preclusion sought by defendant runs afoul of the Supreme Court's holding in *Martin v. Wilks*, 490 U.S. 755, 762, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).

Plaintiffs in *Martin* were white firemen who claimed racial discrimination by their public employer in violation of Title VII of the Civil Rights Act of 1964. The employer raised as a defense the consent decree that it had entered into previously after litigation with certain minority firefighters. This decree approved the promotional plan that plaintiffs claimed was discriminatory. The Court in *Martin* rejected a rule against "impermissible collateral attacks" on civil rights consent decrees that had been adopted by a majority of the circuits whereby "respondents [that] were aware that the underlying suit might affect them and . . . chose to pass up an opportunity to intervene, . . . should not be permitted to later litigate the issues in a new action." 490 U.S. at 762–63 & n. 3, 109 S.Ct. 2180. Butler relies on *Martin's* holding that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Id.* at 762, 109 S.Ct. 2180.

Although a civil rights case involving a consent decree, *Martin* was based on the general rule of due process that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 761, 109 S.Ct. 2180; *accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999); *Richards v. Jefferson County*,

---

**2.** Plaintiffs did not respond to defendant's August 24 motion for notice or Butler's October 26 motion to quash.

517 U.S. 793, 798–99, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). The Court found that this "principle of general application in Anglo–American jurisprudence" was incorporated into the Federal Rules of Civil Procedure. *Martin,* 490 U.S. at 763, 109 S.Ct. 2180 ("[A] party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined."). Further, "the system of joinder contemplated by the rules best serves the many interests involved in the run of litigated cases." *Id.* at 768, 109 S.Ct. 2180.

Defendant responds that *Martin* also recognized that "where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants ... legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process." *Id.* at 762 n. 2, 109 S.Ct. 2180. According to defendant, 41 U.S.C. § 114(b) and RCFC 14(a)(1), the authority for the notice issued to Butler, have been interpreted by the Court of Claims, the Claims Court, and the Court of Federal Claims as just such a "special remedial scheme," and due process will not be offended if the Government raises the notice in a future suit against Butler, thereby binding Butler to issues decided in this case. The Court of Federal Claims currently appears split on whether notice pursuant to section 114(b) and RCFC 14(a)(1) violates *Martin's* general rule or falls within its exception.

1. *Third-party practice in the Court of Federal Claims: 41 U.S.C. § 114(b) and RCFC 14*

1) *Section 114(b)*

The court's third-party practice has developed from the Contract Settlement Act of 1944, ch. 358, § 14, 58 Stat. 663. Currently, the relevant provisions are codified at 41 U.S.C. § 114(b). Because the opinion of Judge Bruggink in *Oak Forest, Inc. v. United States,* 26 Cl.Ct. 1397, 1400–01 (1992), provides a scholarly and comprehensive history of section 114(b) and RCFC 14(a)(1), which is based on the statute, this court merely will summarize the operation of the two authorities.

Section 114(b), reproduced in individual sentences, reads, as follows:

[Sentence 1] The United States Court of Federal Claims, on motion of either of the parties, or on its own *motion,* may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interests, if any, in such suits or proceedings, within such period of time prior to judgment as the United States Court of Federal Claims shall prescribe.

[Sentence 2] If the name and address of any such person is known or can be ascertained by reasonable diligence, and if he resides within the jurisdiction of the United States, he shall be summoned to appear by personal service; but if any such person resides outside of the jurisdiction of the United States, or is unknown, or if for any other good and sufficient reason appearing to the court personal service cannot be had, he may be summoned by publication, under such rules as the court may adopt, together with a copy of the summons mailed by registered mail to such person's last known address.

[Sentence 3] The United States Court of Federal Claims may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, notify such persons to appear to assert and defend such interests.

[Sentence 4] Upon failure so to appear, any and all claims or interests in claims of any such person against the United States, in respect of the subject matter of such suit or proceeding, shall forever be barred and the court shall have jurisdiction to enter judgment pro confesso upon any claim or contingent claim asserted on behalf of the United States against any person who, having been duly served with summons, fails to respond thereto, to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States.

[Sentence 5] Upon appearance by any person pursuant to any such summons or

notice, the case as to such person shall, for all purposes, be treated as if an independent proceeding had been instituted by such person pursuant to sections 1491, 1496, 1501, 1503, and 2501 of title 28, and as if such independent proceeding had then been consolidated, for purposes of trial and determination, with the case in respect of which the summons or notice was issued, except that the United States shall not be heard upon any counterclaims, claims for damages or other demands whatsoever against such person, other than claims and contingent claims for the recovery of money hereafter paid [3] by the United States in respect of the transaction or matter which constitutes the subject matter of such case, unless and until such person shall assert therein a claim, or an interest in a claim, against the United States, and the United States Court of Federal Claims shall have jurisdiction to adjudicate, as between any and all adverse claimants, their respective several interests in any matter in suit and to award several judgments in accordance therewith.

The first sentence of section 114(b) provides a method by which the court can summon a nonparty to appear as a party. Once the third party appears,[4] the fifth sentence of the statute allows the court to exercise jurisdiction over either (1) a claim by the Government for the recovery of money that it already has paid out to the third party in respect of the transaction or matter that constitutes the subject matter of the suit, or (2) a claim or an interest in a claim that the third party asserts against the United States. *United States v. Rush*, 804 F.2d 645, 646–47 (Fed.Cir.1986); *Bowser, Inc. v. United States*, 190 Ct.Cl. 441, 449, 420 F.2d 1057, 1062 (1970); *Petrovich v. United States*, 190 Ct.Cl. 760, 770, 421 F.2d 1364, 1369 (1970). Under the fifth sentence, if the third party asserts a claim against the United States, the United States may assert a claim against the third party, regardless of whether that claim

seeks recovery of money already paid to the third party.

The third sentence of section 114(b) provides a separate procedure that is available only to the Government. On motion of the United States, the court may notify any party with an interest in the litigation to appear. If the noticee appears, the court may exercise jurisdiction under the fifth sentence, in the manner discussed above. If the noticee does not appear, "any and all claims or interests in claims" by that noticee "shall forever be barred." Moreover, the court "shall have jurisdiction," despite the failure to appear, over claims by the Government for the recovery of money that it already has paid out to the noticee in respect of the subject matter of the suit.

### 2) RCFC 14

RCFC 14 also describes two means of bringing a nonparty into litigation pending before the court. First, pursuant to Rule 14(a)(1), the court *sua sponte*, or on the motion of a party, may notify a nonparty of pending claims in which it may have an interest:

> The court, on its own motion or on the motion of a party, may notify any person with legal capacity to sue and be sued and who is alleged to have an interest in the subject matter of any pending action to appear as a party and assert an interest, if any, therein.

Under RCFC 14(c), if the noticee "fails to appear and assert a claim in the subject matter of the action, the claim or interest of the third party therein shall forever be barred." The court reads "therein" to refer to "claim," and not to "subject matter of the action." This reading is consistent with section 114(b)'s reference to "claims or interests in claims."

---

**3.** As discussed *infra* at part 2(2), "money hereafter paid" has been interpreted as applying only to money that the Government previously has paid out to the third party.

**4.** Although the fifth sentence of the statute appears to be triggered "[u]pon appearance," the

normal usage of summons implies that the court acquires jurisdiction over the third party when service of process is accomplished. As discussed *infra* at part 1(2), the transposition of the words "summons" and "notice" in RCFC 14 creates additional confusion.

Second, the United States may move the court under RCFC 14(a)(2) to summon "any third person against whom the United States may be asserting a claim or contingent claim for the recovery of money paid by the United States" with regard to the subject matter of the instant case. The nonparty may be summoned to "appear as a party and defend [its] interest, if any, in such suit."

Although based on section 114(b), *see Oak Forest,* 26 Cl.Ct. at 1400–01, RCFC 14 does not track perfectly the statute in the following respects: Under RCFC 14 only the Government may move the court formally to summon a nonparty into the litigation as a third party, whereas under section 114(b) any party can move for a summons. Under RCFC 14 plaintiffs are relegated to moving for a notice to appear.[5] To the extent that the nonparty is formally joined in the case under either approach, general principles of *res judicata* and collateral estoppel apply.

Under RCFC 14 either party may move for issuance of notice to a nonparty, whereas under the statute, only the Government can so move. Nevertheless, the preclusive effect of a failure to appear operates almost the same under either the rule or the statute. Under the statute a noticee that fails to appear is barred from asserting any claim that it has against the Government and can have judgment entered against it on claims by the Government for recovery of money already paid to the noticee. Under RCFC 14(c)(1), if a noticee "fails to appear and assert a claim in the subject matter of the action, the claim or interest of the third party therein shall forever be barred," regardless of which party moves for the notice to appear.

### 2. *Butler as an interested party*

■ Under both the statute and the rule, "[t]he only requirement for notice is that the party to be noticed *appears* to have

an interest in the proceedings." *Phil. Suburban Corp. v. United States,* 211 Ct.Cl. 354, 355, 1976 WL 7928 (1976); *accord Carrier Corp. v. United States,* 209 Ct.Cl. 267, 269, 534 F.2d 250, 251–52 (1976) (discussing notice issued pursuant to Court of Claims Rule 41(a)(1)).[6] A determination that a nonparty should receive notice "is not equivalent to a decision that the court has subject matter jurisdiction, may treat the noticee as a party in interest, or could render a judgment against" the noticee. *Uram,* 216 Ct.Cl. at 420.

Defendant relies on a long line of cases holding that "[a] person against whom the United States alleges a non-frivolous claim for indemnity is a party who *'appears'* to have such an interest," regardless of the court's jurisdiction to adjudicate such a claim. *Phil. Suburban,* 211 Ct.Cl. at 356 (quoting *Carrier Corp.,* 209 Ct.Cl. at 269, 534 F.2d at 251). Although this is not an indemnity case—a point that is significant for other reasons discussed below—the reasoning in those cases applies equally to the notice to Butler.

■ The Court of Claims in *Bowser* held that "[t]he language of the statute plainly authorizes the court, on motion of the Government, to summon or notify a third party indemnitor ... to appear and assert its interest in the case." 190 Ct.Cl. at 445, 420 F.2d at 1060. Such an interest was deemed proper even though the court lacked jurisdiction to adjudicate the Government's indemnity claim against the noticee.

[The noticee] says that it has not asserted and does not intend to assert a claim against the United States in this action. However, we think it cannot be doubted that [the noticee] has, in the language of the statute, a "possible" interest in the proceeding. Indeed, it has a direct pecuniary interest in the outcome, for if the

---

5. Judge Bruggink explains that the rule implemented Court of Claims precedent prohibiting plaintiffs from summoning third parties. *Oak Forest,* 26 Cl.Ct. at 1401 & n. 7.

6. Court of Claims Rule 41(a) allowed notice to be issued to any person "who appeared to have an interest" in the suit. *Uram v. United States,* 216 Ct.Cl. 418, 420, 1978 WL 8423 (1978). The rule

subsequently was modified to its present form in RCFC 14(a)(1) so that notice may be issued to any person "who is alleged to have an interest" in the suit. The modification has had no material effect on the interpretation of the rule. *See USA Petrochem Corp. v. United States,* 4 Cl.Ct. 345, 347 n. * (1984).

Government is required to pay plaintiff damages as a result of infringing apparatus procured from [the noticee], it may be required to pay such damages under the provisions of the indemnity contract. Consequently, such a third party indemnitor, summoned or noticed, may be made a party to the suit and has a right to participate in order to protect its interests.

*Id.* As in *Bowser,* Butler has a potential pecuniary interest in this case and should be offered the opportunity to participate to whatever extent it wishes. Butler "may assist the United States in the defense of the case, or it may offer additional evidence on its own behalf and advance such legal contentions as it deems appropriate in the protection of its interest." *Id.* at 445–46, 420 F.2d at 1060.

■ Defendant's and Butler's preoccupation with the preclusive effect of the notice has caused them to overlook this point. Because the court's third-party practice rules are designed for the benefit of noticees, as well as the Government, notice is proper irrespective of whether it will later serve to bind the noticee.

### 3. *Issue preclusion* [7]

Under both the statute and the rule, a noticee may not be forced to participate in the noticed litigation. *Uram,* 216 Ct.Cl. at 420. Instead, the statute and rule provide for the issuance of a summons to formally join a nonparty to the case. Butler has made clear that it has no desire to participate in this case as a litigant, disclaiming any benefit

the notice might possibly confer. Thus, the parties have focused on defendant's contention that, should Butler decline to appear in this case, it will nevertheless be bound by the court's findings of fact and conclusions of law in a future suit by the Government.

Both the statute and rule provide that in some instances a noticee may be barred from asserting claims against the Government in another court and that in other instances certain claims by the Government can be decided in the noticee's absence. The court's third-party practice, however, makes careful distinctions between offensive and defensive preclusion, distinctions that are crucial to the situation at hand.

### 1) *Defensive preclusion under the statute and rule*

■ Defendant has not asserted a claim for the recovery of money that it already has paid to Butler, so this is not a situation where the court may adjudicate a claim against Butler in its absence. Further, assuming, *arguendo,* the merit of Butler's insistence that it has no claim or interest in a claim against the United States, it would appear that the statute and rule have no further effect.[8]

Nevertheless, under the language of section 114(b), the notice has substantial operative effect. Although Butler insists that it has no claim against the United States with respect to the subject matter of this case, the statute does not require defendant to rely on Butler's foresight. Section 114(b) allows for issuance of a notice to appear to ensure that

7. Having determined that Butler is an interested party under RCFC 14(a)(1) and section 114(b), the court could deny Butler's motion to quash without further discussion. *See e.g., Del–Rio Drilling Programs, Inc. v. United States,* 17 Cl.Ct. 844, 849 (1989) ("Consequently, where the appearance of such an interest is present, any motion by a party litigant to quash such a notice must be denied."). Butler moved to quash on the ground that the notice serves no purpose, but, as discussed above, the notice is designed in part to benefit Butler—to allow it to defend any interest it may have in this case as it sees fit. Although authority exists for the proposition that the preclusive effect of a notice is not ripe for decision until such effect is claimed in subsequent litigation, *see Sun Shipbuilding & Dry Dock Co. v. United States,* 204 Ct.Cl. 915, 916, 1974

WL 5642 (1974), the notice issued to Butler under the court's August 29 Order advised Butler, pursuant to defendant's proffered notice, that if Butler failed to appear, any claim or interest of Butler in the subject matter of this case would be forever barred. Butler's motion properly invites the court to revisit this instruction.

8. Defendant concedes the absence of jurisdiction to adjudicate whatever liability Butler may have to the Government for precisely these reasons. Given that defendant has not asserted a claim for the recovery of money that it already has paid to Butler and that Butler has asserted no claim against the United States, the jurisdiction authorized by section 114(b), over either noticees or third parties, does not obtain.

whatever claim Butler may have is asserted in this case and not in a subsequent proceeding.

Application of RCFC 14 has the same result. Under RCFC 14(c), if a nonparty receives notice under RCFC 14(a)(1) and "fails to appear and assert a claim in the subject matter of the action, the claim or interest of the third party therein shall forever be barred." Thus, any claim Butler has against the Government with respect to the subject matter of this case must be asserted in response to the notice or will be forever barred. If, as Butler predicts, it has no claim against the United States, then Butler has no concern, but defendant can rest assured that Butler will not be able to change its mind at a later date.

While inviting a party to participate in a suit or forfeit its claims against the Government, RCFC 14(c)(1), by its terms, does not have preclusive effect with regard to any claim by the Government against the noticee. Any such preclusive effect would obtain only under RCFC 14(a)(2), which allows the United States to move the court to summon a "third person against whom the United States may be asserting a claim or contingent claim for the recovery of money paid by the United States." [9] Defendant did not move under RCFC 14(a)(2), nor could it have, because it does not assert a claim or contingent claim for money already paid to Butler.

### 2) *Offensive preclusion under case law*

Defendant nonetheless argues that section 114(b) and RCFC 14 provide for both defensive and offensive preclusion. According to defendant, the statute and rule have been construed broadly to provide that any noticed party which declines to appear will be bound, in a later suit in another court, by determinations of this court in the instant case. Defendant argues that, under these cases, preclusion attaches regardless of whether the subsequent suit is on a claim by the noticee against the Government or a claim by the Government against the noticee.

Offensive preclusion under section 114(b) and RCFC 14(a)(1) is intertwined closely with the scope of jurisdiction under section 114(b). The Court of Claims held for a period of time that its jurisdiction over "claims and contingent claims" by the Government "permit[ted] the United States to bring in parties who were under a duty to save it harmless from judgments such as the one sought by the [instant] plaintiff." *Richfield Oil Corp. v. United States*, 138 Ct.Cl. 520, 523, 151 F.Supp. 333, 335 (1957). Although the statute provides for jurisdiction over claims for the recovery of money "hereafter" paid by the United States, the Court of Claims subsequently determined that the statute only applies when the Government seeks to recover money that it already has paid to the third party in respect of the subject matter of the suit. *Christy Corp. v. United States*, 181 Ct.Cl. 768, 772, 387 F.2d 395, 397 (1967).

In *Christy* the Government contracted with plaintiff for the construction of a ship. Plaintiff shipbuilder thereafter sued the Government for submitting defective plans and specifications on an implied warranty theory. In a situation strikingly similar to the present case, the Government, under a separate contract, had hired another engineering firm to prepare the plans for the vessel. The United States filed a contingent claim against the engineering firm, summoned under section 114(b), alleging that any deficiencies in the plans were due to that firm's fault or negligence. The Court of Claims concluded that jurisdiction over this third-party claim was lacking:

> That portion of 41 U.S.C. 114(b) relating to the contingent claims of the Government is clearly intended to apply to a third party when the Government is sued for money which it had in its hands at one time but which it has disbursed to the third party under a mistake of law or fact. In such instances the Government's claim against the third party is contingent in the sense that if the plaintiff prevails against the Government in the main action, the Gov-

---

9. Moreover, RCFC 14(a)(2) does not rely on any extraordinary rule of collateral estoppel. Because it provides for a summons, and therefore

formal joinder as a party to the litigation, normal rules of *res judicata* apply.

ernment is entitled to recover over against the third person.

*Id. Christy* also relied on the purpose of the statute:

> We have said that the purpose of the above-quoted part of the statute is "to permit the parties to bring in other persons who might, if not foreclosed, later show that they owned or had an interest in the claim sued on, or whose possible right might, if not foreclosed, be used as a defense by the United States to defeat the principal claimant."

*Id.* (quoting *Richfield,* 138 Ct.Cl. at 522–23, 151 F.Supp. at 335 ("The principal purpose of the statute was not, we think, to provide for the adjudication of all possible rights and obligations which might stem, however remotely, from the transaction involved in the principal suit.")); *accord Great Am. Ins. Co. v. United States,* 184 Ct.Cl. 520, 524–25, 397 F.2d 289, 292 (1968). In *Christy* the third party "specifically denie[d] any interest in [plaintiff's] claim against the Government, and there [was] no showing that the third party [had] any right in the subject matter of the principal suit that might be used by the Government to defeat [plaintiff's] recovery." 181 Ct.Cl. at 771, 387 F.2d at 396. *Christy* did not address the matter of issue preclusion.[10]

Three years later, the Court of Claims confirmed the holding in *Christy* and overruled *Richfield. Bowser,* 190 Ct.Cl. at 450, 420 F.2d at 1063; *Petrovich,* 190 Ct.Cl. at 770, 421 F.2d at 1369. The Government was sued for patent infringement in *Bowser* and filed a contingent claim against a third party who had furnished the infringing apparatus under a contract by which the third party agreed to indemnify the Government against damages for infringement. Because the Government's claim did not seek recovery of money already paid to the third party, the Court of Claims reiterated its holding in *Christy* that jurisdiction over such claims was not authorized by section 114(b). *Bowser,* 190 Ct.Cl. at 449, 420 F.2d at 1062–63; *accord S. Cal. Edison Co. v. United States,* 226 F.3d 1349, 1355 (Fed.Cir.2000); *Rush,* 804 F.2d at 647.

Although concluding that jurisdiction was lacking, *Bowser* nevertheless held that "if the third party indemnitor fails to appear in response to the summons or notice, it may not, in later litigation for the enforcement of the indemnity against it, assert that this court incorrectly decided that plaintiff's patent is valid and was infringed by the apparatus furnished by the third party." 190 Ct.Cl. at 446, 420 F.2d at 1060. This rule of issue preclusion was implied from the statute:

> We think there is implicit in the whole plan and purpose of [section 114(b)] a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the instance of a third party, who had a "possible" interest in the case in this court but who failed to appear and protect his interest after timely notice or summons had been served upon him. A holding to the contrary would ignore the principal reasons which led Congress to enact the law.

*Id.* at 445–46, 420 F.2d at 1060–61.

Defendant's argument on issue preclusion relies primarily on this quotation from *Bowser.* Defendant reads *Bowser* as stating a broad rule of offensive collateral estoppel, a rule that binds a noticee in future suits by the Government against the noticee. While several decisions of the Court of Federal Claims and the Claims Court have cited *Bowser* for a broader rule,[11] this court respectful-

---

10. Although *Christy* dealt with jurisdiction and did not directly address the matter of issue preclusion, the Court of Claims nevertheless rejected defendant's argument that "adjudication of its contingent claim ... in this court will settle all the issues between plaintiff and defendant and between the third party and defendant with resulting economy of time and expense to all the parties." *Id.* at 774, 387 F.2d at 398. The third party in *Christy* was discharged from the proceeding, *id.* at 770, 387 F.2d at 396, and was not

a "surety, assignee, or indemnifier with respect to the contract between [plaintiff] and the Government," *id.* at 773, 387 F.2d at 397–98.

11. Cases that discussed preclusion beyond the context of third-party indemnitors include: *Oak Forest,* 26 Cl.Ct. at 1401 & n. 13, *RSH Constructors, Inc. v. United States,* 20 Cl.Ct. 1, 3 (1990); *Del–Rio Drilling,* 17 Cl.Ct. at 849 & n. 9; and *Myrtle Beach Pipeline Co. v. United States,* 6 Cl.Ct. 363, 365–66, 367 n. 3 (1984). In *RSH*

ly disagrees. *Bowser* cannot be read out of the context of the particular issue confronted in that case, which was framed as one involving a third-party indemnitor:

> The principal issue to be decided is whether Section [114(b)] grants the Court of Claims jurisdiction to render judgment on a contingent claim asserted by the United States against a third party who has furnished infringing apparatus to the United States under a contract in which the third party has agreed to indemnify the United States against damages for patent infringement.

*Id.* at 444–45, 420 F.2d at 1060. The explanation in *Bowser* quoted by defendant, therefore, must be read in the context of the narrow holding in that case: "[I]f the third party indemnitor fails to appear in response to the summons or notice, it may not, in later litigation for the enforcement of the indemnity against it, assert that this court incorrectly decided that plaintiff's patent is valid and was infringed by the apparatus furnished by the third party." *Id.* at 446, 420 F.2d at 1060.

The authority relied on by *Bowser* confirms that the Court of Claims announced a narrow rule applicable to third-party indemnitors—not a broader rule applicable to all noticees that is pressed for by defendant. *Bowser* stated that its construction of section 114(b) was "in accord with the general principles of law applicable in such situations":

> These principles are summarized in Corpus Juris Secundum as follows:
>
> *Notice of action and opportunity to intervene.* It has even been held that if a person who has such an interest in the subject matter as would be injuriously affected by the judgment, or is in privity with, or bound to indemnify, one of the parties, has notice of the pendency of the action and refuses or neglects to appear and avail himself of his rights, he will be concluded by the judgment, although he was not named as a party to the action. A fortiori such person will be concluded if he appeared and participated in the trial or

authorized a party to the action to protect his rights.

*Id.* at 446, 420 F.2d at 1061. The above quotation confirms that *Bowser* did not announce a new rule, but, rather, described a limited exception to a venerable general rule. The general rule is given in 50 C.J.S. *Judgments* § 842 (1997): "[T]he doctrine of collateral estoppel, or issue preclusion, can apply only to the parties to the action in which the judgment was rendered and to the privies of such parties …." The quotation in *Bowser*, currently found at 50 C.J.S. *Judgments* § 843, is a qualification of this general rule. Notably not quoted in *Bowser* is the remainder of section 843: "On the other hand, mere notice of the action to one not in privity with, or bound to indemnify, any of the parties, coupled with the fact that he might have been allowed to intervene had he chosen to do so, does not make him a party to the judgment." *See also* RESTATEMENT (SECOND) OF JUDGMENTS §§ 34, 57 (1982); 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §§ 4449, 4452 (1981 & Supp.2001).

*Bowser* dealt with the limited situation described in section 843—the United States alleged that the third party in that case was under a contractual obligation to indemnify the Government. Recognizing that, per *Christy*, section 114(b) did not confer actual jurisdiction over the third-party indemnitor, *Bowser* held that the principles of collateral estoppel summarized in section 843 were embodied in section 114(b). 190 Ct.Cl. at 446, 420 F.2d at 1061. Because the court is obliged to give effect to *Bowser's* statement that it was applying general principles of law, the court rejects the construction espoused by defendant as going far beyond these principles.

Similarly, in *Petrovich*, the Court of Claims relied on *Bowser* to conclude that section 114(b) embodied another exception to the general rule that a nonparty is not bound, namely, where a nonparty actually participates in the litigation. 190 Ct.Cl. at 771, 421 F.2d at 1370. The United States

---

*Constructors*, however, the noticee was a surety. Additionally, the Court of Claims in *Uram* did not reveal whether the noticees in that case were

indemnitors of the Government. 216 Ct.Cl. at 419. Notably, *Uram* discussed preclusion in permissive, rather than mandatory, terms.

was sued for damages arising from dredging conducted pursuant to a river and harbor improvement project. Prior to the dredging, the local governmental body passed a resolution obligating itself to indemnify the United States for any damages caused during the project. The United States then moved for a summons and filed a third-party claim against the local government. As in *Bowser*, *Petrovich* held that the third-party claim was not a contingent claim under section 114(b):

> We reiterate our holding in [*Bowser*] that [section 114(b)] does not vest us with jurisdiction to render judgment on a contingent claim by the Government against a third party solely on the basis of that party's obligation to "save harmless" the United States from the damages recovered in the principal action.

*Id.* at 770, 421 F.2d at 1369. The Court of Claims made the point that "the decision and judgment on plaintiff's claim against the Government binds [the third party] as fully as it does the United States." *Id.* at 771, 421 F.2d at 1370.

> The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record.

*Id.* (quoting *Souffront v. Compagnie Des Sucreries*, 217 U.S. 475, 487, 30 S.Ct. 608, 54 L.Ed. 846 (1910)).

*Petrovich* supports a narrow reading of *Bowser*—had *Bowser* announced a broad rule of issue preclusion over third parties and noticees, *Petrovich* would have cited *Bowser* for such a rule. Instead, the Court of Claims in *Petrovich*, addressing a distinct situation, relied on a distinct principle of the law of judgments that actual participation by a nonparty will render a subsequent judgment binding on it. *See Montana v. United States*, 440 U.S. 147, 154–55, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (applying issue preclusion

where "nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved"); *see also Martin*, 490 U.S. at 762 n. 2, 109 S.Ct. 2180 (discussing *Montana* as an exception to the general rule); WRIGHT, MILLER & COOPER, § 4451, p. 427.

*Bowser* and *Petrovich* therefore stand for the proposition that a noticee that fails to appear will be bound under section 114(b), in a subsequent suit against it, only in certain previously recognized exceptions to the general rule that judgments do not bind nonparties. This general rule and its exceptions were recited in *Martin*, which quoted *Federal Practice and Procedure* for the "deep-rooted historic tradition that everyone should have his own day in court." 490 U.S. at 762, 109 S.Ct. 2180 (quoting WRIGHT, MILLER & COOPER, § 4449, p. 417). For his part, Professor Wright discusses at length the exceptions to this rule, traditionally framed as a question of "privity," but which are more properly analyzed as instances of actual participation or a duty to participate, of representation, and of relationships arising out of transfers of property and claims. *Id.* § 4449, p. 418–19. Consequently, after stating the general rule, *Martin* immediately noted that the Court has "recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party," or "where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants." 490 U.S. at 762 n. 2, 109 S.Ct. 2180; *accord Richards*, 517 U.S. at 798–99, 116 S.Ct. 1761.

The third-party indemnitor exception, historically derived from the practice of "vouching," is based on the representative nature of such suits and the indemnitor's duty to participate. *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1139 (5th Cir. 1991); *Humble Oil & Refining Co. v. Phil. Ship Maint. Co.*, 444 F.2d 727, 735 n. 14 (3d Cir.1971); RESTATEMENT (SECOND) OF JUDGMENTS §§ 57, 58; WRIGHT, MILLER & COOPER § 4452, p. 445–46. As with these authorities, the case law relied on by *Bowser* concerns

recognized limited exceptions to the general rule. *See Souffront,* 217 U.S. at 487, 30 S.Ct. 608 (actual participation); *Grummons v. Zollinger,* 341 F.2d 464, 465 (7th Cir.1965) (indemnity); *Miller & Co. of Birmingham, Inc. v. Louisville & Nashville R.R.,* 328 F.2d 73, 78 (5th Cir.1964) (indemnity). Given this background, those Court of Claims decisions that have not phrased the holding in *Bowser* in purely third-party indemnitor terms, *see Carrier Corp.,* 209 Ct.Cl. at 269–70, 534 F.2d at 251–52; *Rockwell Int'l Corp. v. United States,* 31 Fed.Cl. 536, 539 (1994), have done so in permissive, rather than mandatory, terms, *see Uram,* 216 Ct.Cl. at 420 ("Should a noticed person decline to appear, however, he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court."); *USA Petrochem,* 4 Cl.Ct. at 347 (same); *Midwest Indus. Painting of Fla. v. United States,* 1 Cl.Ct. 209, 211 (1983) (same).[12]

Finally, the policy concerns expressed in the case law do not support defendant's construction of section 114(b) and RCFC 14.

The Court of Claims understood that the purpose of section 114(b) was

> to permit the parties to bring in other persons who might, if not foreclosed, later show that they owned or had an interest in the claim sued on, or whose possible right might, if not foreclosed, be used as a defense by the United States to defeat the principal claimant.

*Richfield Oil,* 138 Ct.Cl. at 522–23, 151 F.Supp. at 335; *accord Christy,* 181 Ct.Cl. at 771, 387 F.2d at 396. Binding *Butler* in a subsequent suit by the Government will not insulate the United States from future claims against it. That protection is provided by the language in section 114(b) and RCFC 14(a)(1) that requires a noticee to assert any claims it has against defendant in response to the notice. Nor will the absence of issue preclusion provide the United States with a defense to plaintiff's claim.

The court recognizes that several decisions of the Court of Federal Claims and the Claims Court have cited *Bowser* for the proposition that issue preclusion applies whenever a noticee fails to appear.[13] As a result, some

**12.** The common-law exceptions to the general rule adopted in *Bowser* and *Petrovich* may no longer be good law. In *Penda Corp. v. United States,* 44 F.3d 967, 970 (Fed.Cir.1994), the Federal Circuit confronted the issue of whether a third-party indemnitor of the Government, having joined the case after receiving notice under RCFC 14(a)(1), had independent standing to maintain appeal after the Government had withdrawn its own appeal. *Penda* held that no standing existed for several reasons, but in doing so rejected the third party's argument that it might be bound by the issues of law and fact decided by the trial court.

The Federal Circuit held that the doctrine of issue preclusion could not be raised in subsequent litigation by the United States or by the plaintiff for three reasons. *Id.* at 972. First, citing section 38 of the *Restatement, Penda* held that the two were not adversarial parties at trial. Second, citing section 37, comment (f) of the *Restatement,* the third party was only a "nominal defendant." *Id.* Because the subject matter of the suit involved the Government's obligation under *section 1498(a),* and not an obligation of the third party, and because this fact was known to plaintiff, plaintiff could not assert issue preclusion against the third party. *Id.* Finally, citing section 28(1) of the *Restatement, Penda* reasoned that neither the United States nor plaintiff could assert issue preclusion against the third party because the Federal Circuit's holding, as a mat-

ter of law, precluded the third party from obtaining review of the trial court's judgment. *Id.* at 972–73.

*Penda* did not mention *Bowser, Petrovich,* sections 39, 57, or 58 of the *Restatement,* or any other authority for the proposition that third-party indemnitors and parties who actually participate in the litigation can be bound. (The record in that case is not available from the Clerk of the Court for the Federal Circuit.) Given the decision in *Penda,* it is now unclear whether any third-party noticee can be bound by issues decided in the noticed litigation unless the United States appeals the adverse judgment.

The court cannot conclude that *Penda* overruled, *sub silencio,* established precedent of the Court of Claims, *see South Corp. v. United States,* 690 F.2d 1368, 1370–71 & n. 2 (Fed.Cir.1982) (holding that decisions of Court of Claims are binding precedent in Federal Circuit, and can only be overruled by Federal Circuit *en banc* ), and so has addressed defendant's contentions under *Bowser* and *Petrovich* as if those cases were still good law, leaving any tension between them and *Penda* for the Federal Circuit to resolve.

**13.** *See supra* note 11. *Del–Rio Drilling* and *Myrtle Beach Pipeline,* moreover, discussed a broader rule while simultaneously acknowledging the narrow common law exception on which *Bowser* relied. *Del–Rio Drilling,* 17 Cl.Ct. at 850 ("These

decisions have relied on this broad construction to conclude that the Supreme Court in *Martin* overruled *Bowser*.[14] This court respectfully bases its reading of the law on the narrow situation confronted by the Court of Claims in *Bowser*. *Bowser* did not announce a general rule of issue preclusion; instead, *Bowser* construed the statute to embody a specific and venerable principle of collateral estoppel, one that has no application in the instant case. No indemnification agreement has been offered by defendant. Instead, defendant merely relies on the possibility that it may have a cause of action against Butler should defendant be found liable in this case. Defendant, indeed, has indicated that any cause of action it has against Butler will be based on Butler's negligence or malpractice, not on any agreement by Butler to save the Government harmless.

### 4. *Due process*

Butler's argument that any offensive preclusion violates due process is moot. Outside of the limited confines of *Bowser* and *Petrovich*, the preclusive effect of section 114(b) and RCFC 14(a)(1) is that a noticee that fails to appear relinquishes any claim or interest in a claim that it may have against the United States with regard to the subject matter of the instant litigation. In this man-

ner the statute and rule "conclude the rights of strangers" and thus instigate potential tension with the general rule recited in *Martin* that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." 490 U.S. at 762, 765, 109 S.Ct. 2180.[15]

*Martin* also recognized well-established exceptions to the general rule, noting particularly that "where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process." *Id.* at 762 n. 2, 109 S.Ct. 2180. The parties appear to agree that section 114(b) and RCFC 14(a)(1) constitute a special remedial scheme barring future claims by noticees against the Government that are related to the noticed litigation. Defendant, of course, argues for a much broader remedial scheme that includes offensive, as well as defensive, preclusion.[16] Yet Butler also appears to concede that the express operation of the rule and statute fits within the exceptions recited in *Martin:* "If there is any 'special remedial scheme' established in 41 U.S.C. § 114(b) and RCFC 14(a)(1), then it applies only to

principles [stated in 50 C.J.S. *Judgments* § 843] are incorporated into RUSCC 14(a)(1) and, as *Bowser* observes, may be found in many federal court decisions. 'There is nothing unfair or unconstitutional about this third party practice.'" (quoting *Myrtle Beach Pipeline*, 6 Cl.Ct. at 366)).

**14.** A split has developed within the Court of Federal Claims as to whether *Martin* overruled Court of Claims decisions binding a noticee to findings of fact and conclusions of law arrived at during the noticed litigation. Several opinions of this court have held that issue preclusion may not be applied against a Rule 14 noticee. *See Oak Forest*, 26 Cl.Ct. at 1403 (holding that RCFC 14 "do[es] not fall, either directly or by analogy, into one of the few exceptions listed in *Martin* to this general rule"); *RSH Constructors*, 20 Cl.Ct. at 7 ("Binding contentions of fact and law over a non-party that occur under [RCFC 14], '[conclude] the rights' of a non-party. This is in violation of *Martin*." (quoting *Martin*, 490 U.S. at 762, 109 S.Ct. 2180)); *see also Rice v. United States*, 39 Fed.Cl. 747, 749 (1997); *Orion Scientific Sys. v. United States*, 28 Fed.Cl. 669, 671 n. 3 (1993). At least one judge has held that section 114(b) and RCFC 14(a)(1) constitute a "special

remedial procedure[]" and therefore fall within an exception to the general rule that judgments do not bind nonparties. *Rockwell Int'l*, 31 Fed. Cl. at 539 (concluding that, by its own terms, *Martin* "has no application to the special remedial procedures provided in section 114(b)").

**15.** *Martin* does not affect the operation of RCFC 14(a)(2) and the first sentence of section 114(b) as those provisions contemplate a summons formally bringing the third party into the litigation.

**16.** The rule of offensive issue preclusion advanced by defendant is considerably broader than the narrow exception, recognized in *Martin* for representative suits and special remedial schemes. *See* 490 U.S. at 762 n. 2, 109 S.Ct. 2180 (discussing special remedial schemes that expressly foreclose successive litigation by nonlitigants, not against nonlitigants); *Gross v. Weingarten*, 217 F.3d 208, 218 (4th Cir.2000) (stating that "narrow exception" for special remedial schemes "does not, however, extend so far as to compel every individual against whom [a litigant] may later assert a claim to appear ... in order to preserve a defense to liability in a subsequent action").

affirmative claims brought against the United States …." Butler's Br. filed Dec. 19, 2001, at 5. Even those decisions that viewed *Martin* as a limit on third-party practice only rejected what were perceived to be broader rules of offensive issue preclusion—not the bar against claims against the United States. *See, e.g., Oak Forest*, 26 Cl.Ct. at 1403 & n. 15 (leaving open question whether court may notify and bind a nonparty that appears to a have a claim or interest against the United States).

The long line of Court of Claims decisions expounding the purposes served by section 114(b) and RCFC 14(a)(1), as well as the limits of that scheme, overwhelmingly reflect the Court of Claims's conclusion that the statute and rule comprise a special remedial scheme within the meaning of *Martin*—a scheme that expressly forecloses successive litigation by nonparties, but in which the rights of noticees have been balanced carefully against the interests of the United States. The noticee receives actual notice and the opportunity to join the litigation, that is, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). The notice properly informs the recipient of the preclusive effects of failure to intervene with respect to claims against the Government. Acutely aware of the contours of due process and the law of judgments, the Court of Claims consistently ratified this special remedial scheme.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Butler's motion to quash notice is denied.[17]

2. The Clerk of the Court shall serve a copy of the order on counsel for Butler.

17. The court commends counsel for the quality of Butler's reply brief and regrets that the case

3. The court's chambers this date transmitted a copy of this order to all counsel by facsimile transmission.

might proceed without his participation.