Karen SHARR; et al., Plaintiffs,

v.

DEPARTMENT OF TRANSPORTA-TION, being sued as Norman Mineta, Secretary of the United States Department of Transportation and Administrator of the Transportation Security Administration (TSA), in his official capacity; et al., Defendants.

Civil No. 02–1513–JO.

United States District Court, D. Oregon.

March 3, 2003.

Don S. Willner, Willner & Hooton, LLP, Portland, OR, for Plaintiffs.

John G. Azar, John G. Knepper, Marsha S. Edney, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, D.C., Ronald K. Silver, Assistant United States Attorney, District of Oregon, United States Attorney's Office, Portland, OR, Courtney C. Dippel, Louis A. Santiago, Holland & Knight, LLP, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

This action arises out of the post-September 11, 2001, nationwide federalization of airport security. Plaintiffs, six unsuccessful applicants for federal security screener positions at Portland International Airport ("PDX"), bring this action against the Transportation Security Administration ("TSA"), through its Administrator and the Under Secretary of Transportation for Security, Norman Mineta, and TSA's contractor, NCS Pearson, Inc., alleging claims for discrimination in the application and hiring process.

In their class action complaint,[1] plaintiffs seek preliminary and permanent injunctive relief and unspecified money damages against both defendants under Title VII of the Civil Rights Act of 1964 *as amended* (42 U.S.C. § 2000e *et seq*)(race, gender, and national origin), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq* (age), the Aviation and Transportation Security Act ("ATSA"), Pub.L. 107–71, Sec. 111(f)(2)(veterans preference), and under 28 C.F.R. § 50.14 (Guidelines on Employee Selection Proce-

dures). *See* Class Action Complaint ("Complaint"), ¶¶ 24–27.

Plaintiffs filed this action on November 7, 2002, and immediately sought a preliminary injunction. Plaintiffs requested, among other things, an order requiring immediate retesting of all class members under court supervision and the immediate hiring of all those who passed the test.

On January 9, 2003, the court held a hearing on the motion for preliminary injunction, limited to plaintiffs' prima facie case. Shortly before the hearing, in evident response to defendants' motions to dismiss,[2] plaintiffs filed a "supplemental complaint," which added a single claim of employment discrimination against defendant NCS Pearson under ORS 659A.030.

At the hearing, I heard the parties' arguments and the testimony of several witnesses representing the various plaintiff subclasses. While the evidence tended to show that defendants' testing and hiring procedures may have unfairly disadvantaged the plaintiffs, the evidence fell far short of demonstrating unlawful discrimination sufficient to sustain the requested injunction. More critically, the record established—and plaintiffs conceded—that plaintiffs had failed to satisfy the administrative prerequisites to their Title VII and ADEA claims.[3] Those claims are, therefore, not properly before the court. Based on the above reasons, I denied the motion for preliminary injunction.

Because plaintiffs' state law claim as a basis for the preliminary injunction had not been briefed by the time of the hear-

---

1. Plaintiffs have represented that they will not pursue class certification. Currently there are only six named plaintiffs.

2. Defendants both moved to dismiss the complaint; those motions are in abeyance pending complete resolution of plaintiffs' motion for preliminary injunction.

3. Plaintiffs' veterans preference claim under section 111(f)(2) of the ATSA and their fairness claim under 28 C.F.R. § 50.14 lack substantive merit and will not be discussed.

ing, I took that claim under advisement pending further briefing. The parties have now fully briefed the state law claim. Having considered the parties' arguments and the evidence of record, I deny plaintiffs' motion for a preliminary injunction based on state law.

## LEGAL AND FACTUAL BACKGROUND

The background of the present litigation is largely undisputed.

On September 11, 2001, foreign terrorists armed with box-cutters and knives hijacked four commercial airplanes and crashed them, full of passengers and crew members, into the World Trade Center, the Pentagon, and the Pennsylvania countryside. On November 19, 2001, in response to the airport security breakdown that allowed the hijackings and to ensure the "safety and security of the civil air transport system,"[4] Congress enacted the Aviation Transportation Security Act ("ATSA"), Pub.L. 107–71. The ATSA made airport security a direct federal responsibility, created the TSA, and charged the Under Secretary of Transportation for Security with day-to-day federal security screening operations at commercial airports nationwide. The ATSA mandated that TSA develop standards for the hiring and training of security screening personnel consistent with legislative requirements of the Act. The ATSA also directed TSA to hire, train, and deploy, by November 19, 2002, a sufficient number of federal security screeners to conduct screening of all passengers and property at the nation's commercial airports.

To assist in the evaluation and hiring of the tens of thousands of screeners required under the ATSA, TSA solicited bids from contractors to support TSA in the development, implementation, and execution of a qualification, assessment, staffing, and placement system, and to provide ongoing human resource services for airport security screeners, law enforcement officers, and other TSA personnel in compliance with federal law.

NCS Pearson, a global provider of applications, technologies, and services to education, government, and business clients, was the successful bidder. TSA awarded the contract to NCS Pearson effective February 25, 2002. The contract was for a fixed period of time and required NCS Pearson to complete its performance by December 31, 2002.[5]

Among its many tasks under the TSA contract, NCS Pearson managed TSA job postings and candidate intake, provided assessment center facilities, equipment and staff, scheduled candidate assessments, conducted required tests and interviews, identified qualified candidates, and aided in the award of TSA job offers. Declaration of Stephen Maier ("Maier Decl."), ¶ 10. TSA, through NCS Pearson, recruited applicants for three security positions: transportation security screener, lead transportation security screener, and supervisory transportation screener. NCS Pearson recruited "incumbent screeners," i.e., private sector screeners who worked for the airlines or for security companies hired by the airlines, like plaintiffs in this case, along with new applicants.

According to NCS Pearson, the TSA testing process was the same for all applicants nationwide. Incumbent screeners were given the same tests as new applicants, but they were tested after the new applicants were tested. The parties agree that incumbent screeners who passed the

---

4. *Aviation and Transportation Security Act,* H.R. Rep. 107–296 at 53 (2001).

5. The contract was not extended and expired on December 31, 2002. Declaration of Stephen Maier, ¶ 4.

tests were guaranteed federal screener positions with TSA.

The PDX assessment center was open from early September 2002, through October 18, 2002. *See* Declaration of Thomas Joyce ("Joyce Decl."), ¶ 3.[6] Candidates were notified in advance of their scheduled date for testing. At the assessment center, applicants proceeded through a pre-established series of tests. Applicants were tested for the highest level position for which they had applied and were qualified for, as well as all lower positions. The testing included physical standards tests, visual acuity and color perception tests, aural acuity tests, medical and other examinations, and English proficiency tests, with all computer tests scored remotely. Maier Decl., ¶ 12. If an applicant failed any test in the series, the applicant was deemed disqualified and did not proceed. If a new applicant or an incumbent applicant successfully passed the tests, the applicant was deemed qualified and eligible to serve as a federal screener. As mentioned, the incumbent PDX screeners who passed were guaranteed federal screener positions with TSA.

Before November 19, 2001, plaintiffs were employed by Huntleigh USA Corporation as private screeners at PDX. All Huntleigh employees were terminated or told they would be terminated before the transition to a federal screener workforce. Complaint, ¶¶ 9, 12. In their complaint, plaintiffs allege that the testing process "was designed to make it difficult for the Huntleigh screeners to pass," in that defendants:

(a) Highlight[ed] in advance names of Huntleigh screeners who were to be failed;

(b) M[ade] part of the testing process subjective;

(c) [Gave] Huntleigh screeners less time to take and complete the testing process than provided to new applicants;

(d) Test[ed] Huntleigh employees for supervisor positions and fail[ed] them, even though they had only applied for screeners positions;

(e) [Told] individual Huntleigh applicants:

(1) he was too old;

(2) that the assessor saw something he did not like so the applicant failed, but applicant was not told what that was;

(3) she failed because she was not born in this country and was of a different culture;

(4) he was disqualified for talking about a subject unrelated to the test;

(5) asking intimidating questions which were not job related;

(6) grabbing an applicant and yelling at her, and then throwing her out the back door;

(7) pulled headphones off the head of an applicant from behind;

(8) telling an applicant with graduate academic degrees in a foreign country that her English was not perfect; and

(9) not telling applicants why they failed.

Complaint, ¶ 20.

Plaintiffs claim that new applicants had two days in which to complete the tests, but that the incumbent screeners were required to complete the tests in one day, to their detriment. NCS Pearson disputes this, stating that the national goal with respect to all testing was to have appli-

---

**6.** Minor discrepancies between the various declarants as to the precise dates are immaterial.

cants complete their testing in one day, however, "some applicants were tested over a two day period due to equipment shortages and testing start times." Joyce Decl., ¶¶ 11–13. When the Portland assessment center opened in September 2002, a shortage of computers used in VUE Testing[7] and fingerprint machines used in Phase II resulted in some applicants being tested over a two-day period. By September 9, 2002, as many applicants as could be tested in one day completed their testing in one day. Joyce Decl., ¶ 17.

According to plaintiffs, NCS Pearson tested 337 Huntleigh screeners. Of these, 135 men and 58 women passed; 60 men and 84 women failed. Plaintiffs assert that "[t]he profile of the typical Federal screener at PDX is now a white male under age 45." Complaint, ¶ 18. At this juncture in the litigation, it is unclear how many of those who failed the tests have joined as plaintiffs.[8]

## DISCUSSION

The question presently before the court is whether plaintiffs' state law employment discrimination claim against NCS Pearson supports the requested preliminary injunction. I find that it does not.

### 1. *Standard*

 To obtain a preliminary injunction, plaintiffs generally must satisfy one of two tests. The traditional test requires plaintiffs to show " '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).' " *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.1995) (citation omitted). In

the alternative test, "a court may issue a preliminary injunction if the moving party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.' " *Johnson*, 72 F.3d at 1430 (citations omitted; emphasis in original). The two formulations under the alternative test "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001).

 To the extent that plaintiffs seek a mandatory injunction, that is, a requirement that NCS Pearson go beyond the status quo and take affirmative steps to retest them, the Ninth Circuit imposes a more stringent standard. *See Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir.1994)(mandatory preliminary injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored")(alteration in original). Faced with a request for a mandatory preliminary injunction, "the district court should deny such relief unless the facts and law clearly favor the moving party." *Stanley*, 13 F.3d at 1320. This is particularly true where, as here, the requested injunction would encroach on government personnel matters. *See Sampson v. Murray*, 415 U.S. 61, 83–84, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

Plaintiffs contend that they do not seek a mandatory injunction, merely a return to the status quo that existed before the testing. As a practical matter, because NCS Pearson's contract with TSA has expired and the situation that existed pre-testing

---

**7.** VUE Testing, also known as Phase I, consisted of three timed tests on a computer. Declaration of Susan Nelson, ¶ 4.

**8.** *See* footnote 1.

no longer exists, plaintiffs do, in fact, seek an injunction that goes well beyond the status quo. I need not resolve this issue, however, because plaintiffs are not entitled to any form of injunctive relief under any of the above tests.

### 2. *Plaintiffs' Claim Against NCS Pearson*

Plaintiffs' supplemental complaint alleges a state law employment discrimination claim under ORS 659A.030 solely against NCS Pearson. In their memorandum in support of their state law claim, plaintiffs clarify that their claim falls under ORS 659A.030(1)(e), which provides in relevant part as follows:

(1) It is an unlawful employment practice:

\* \* \*

(e) For an employment agency to classify or refer for employment, or to fail or refuse to refer for employment, or otherwise to discriminate against any individual:

(A) On the basis of the individual's race, color, national origin, sex, religion, marital status or age, if the individual is 18 years of age or older[.]

ORS 659A.030(1)(e). "Employment agency," for purposes of that statute, is defined as "any person undertaking to procure employees or opportunities to work." ORS 659A.001(5).

■ As a preliminary matter, I note that while plaintiffs appropriately do not include TSA as a defendant in their state law claim, in their memorandum they sug-gest that TSA may be liable under ORS 659A.030. Plaintiffs' Memorandum Re Oregon Civil Rights Statute, p. 3. To put the matter to rest, TSA, a federal agency, is not subject to liability under ORS 659A.030. In the context of this case, which involves federal, not state, employment, plaintiffs' remedies against the federal employer, TSA, if any, are defined by the provisions of federal law, specifically, Title VII, 42 U.S.C. § 2000e–16, and the ADEA, 29 U.S.C. § 633a. *See Brown v. General Services Administration,* 425 U.S. 820, 825–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *see also, e.g., Belhomme v. Widnall,* 127 F.3d 1214, 1216 (10th Cir.1997); *Schroder v. Runyon,* 1 F.Supp.2d 1272, 1279 (D.Kansas 1998)(federal employee's state law discrimination claim preempted by Title VII).

With respect to plaintiffs' state law claim against NCS Pearson, plaintiffs admit that "TSA hired NCS Pearson \* \* \* to do a fair testing and hiring of existing Huntleigh employees and new applicants, thereby making Pearson the agent of TSA to perform a Federal function." Complaint, ¶ 10. The evidence supports that admission, establishing that NCS Pearson acted solely within the parameters of its contract with TSA and as TSA's agent. *See* Maier Decl., ¶¶ 15–16. TSA, not NCS Pearson, established the qualification standards for the hiring of airport screeners. Maier Decl., ¶ 14. NCS Pearson fulfilled its contract obligations, and the TSA/NCS Pearson contract expired on December 31, 2002.[9] Maier Decl., ¶ 18.

**9.** NCS Pearson explains that in carrying out its contract obligations, NCS Pearson received over 5.9 million inquiries, held more than 89 job fairs in 56 cities, processed over 1.4 million completed job applications, and assessed over 430,000 prospective applicants in more than 150 assessment centers throughout the continental U.S., Alaska, Hawaii, Puerto Rico, American Samoa, and Guam. Under the direction of TSA, NCS Pearson qualified more than 125,000 candidates as eligible, and assisted TSA in hiring a workforce of approximately 45,000 federal security screeners. *See* NCS Pearson's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, p. 4; *see also* Declaration of Elizabeth Kolmstetter, Ph.D., ¶ 23.

Having considered the matter thoroughly, I conclude that plaintiffs' state law claim does not support the requested injunctive relief, for several reasons. First, as NCS Pearson points out, it has no authority to provide the relief plaintiffs request—immediate retesting—because it no longer has any contract relationship with TSA. Additionally, TSA, not NCS Pearson, is the federal employer. More critically, plaintiffs' evidence of unlawful discrimination is insufficient to support a preliminary injunction, even if NCS Pearson could in fact provide the requested relief.

Second, assuming without deciding that NCS Pearson may be subject to state law in its role as a federal contractor, I am not convinced that plaintiffs are likely to prevail on their claim that NCS Pearson, a contractor that performed its work under a specific federal contract, qualifies as an "employment agency" within the meaning of ORS Chapter 659A. Coupled with plaintiffs' minimal evidence of "irreparable" harm, their weak showing on the merits of their claim compels me to conclude that plaintiffs are not entitled to preliminary injunctive relief.

Thus, I deny plaintiffs' motion. While in my view TSA's decision to test new applicants first was illogical and inherently unfair to incumbent screeners like these plaintiffs and may have put them at a competitive disadvantage,[10] I am not persuaded that the harm plaintiffs suffered was the product of unlawful discrimination, or that they have any available remedy in federal court.

I also note my concern that in the absence of any viable federal claim, this court may lack subject matter jurisdiction over this action. TSA, a federal agency, is not a "citizen" of any state, and its presence as a defendant defeats diversity jurisdiction. *Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 584 (D.C.Cir. 1993); *see Dyack v. Commonwealth of Northern Mariana Islands,* 317 F.3d 1030, 1037 (9th Cir.2003); *see also* Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2002). Moreover, because plaintiffs apparently no longer seek class action status and the case does not involve a common fund, they cannot aggregate their claims, as they appear to have done in their original class action complaint,[11] to meet the jurisdictional amount in controversy requirement. *See, e.g., Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1263–64 (11th Cir.2000).

## CONCLUSION

Plaintiffs' motion for preliminary injunction (# 3) is DENIED.

---

**10.** TSA explains this decision as necessary to ensure the presence of sufficient federal personnel to staff the checkpoints before testing of contract screeners could begin. *See* Declaration of Elizabeth Kolmstetter, Ph.D., ¶ 19.

**11.** The class action complaint alleges only that "[t]he amount in controversy against defendant Pearson exceeds $75,000 plus interest and costs." Complaint, ¶ 4.