2005 OK 46

Robert E. COLTON, Roy E. West, and Gloria Jean West, for themselves and all others similarly situated, Plaintiffs/Appellants,

v.

HUNTLEIGH USA CORPORATION, a Missouri corporation, and ICTS International, N.V., a Netherlands corporation, Defendants/Appellees.

No. 100,051.

Supreme Court of Oklahoma.

June 21, 2005.

Bob G. Carpenter, Richard D. Laquer, and John R. Stacy, Carpenter and Laquer, Oklahoma City, OK, for Plaintiffs/Appellants.

Burck Bailey, Fellers, Snider, Blankenship, Bailey and Tippens, Oklahoma City, OK, for Defendants/Appellees.

EDMONDSON, J.

¶ 1 The three plaintiffs were employees of Huntleigh USA Corporation (Huntleigh) and worked as pre-board security screeners at Will Rogers International Airport in Oklahoma City. Employees brought an action in the District Court for wages that were unpaid by Huntleigh. Huntleigh argued that the state court lacked jurisdiction; the District Court agreed and sustained Huntleigh's motion to dismiss. We conclude that the District Court has jurisdiction of Employees' wage claim.

¶ 2 Huntleigh had contracts with air carriers to provide security screening of passengers. After the terrorist attacks on September 11, 2001, Congress enacted the Aviation Transportation Security Act, Pub.L. 107–71, and created the Transportation Security Administration (TSA). *See Sharr v. Department of Transp.*, 247 F.Supp.2d 1208, 1210 (D.Or.2003), (creation of the TSA discussed). The head of TSA is an Under Secretary of the Department of Transportation, and the Under Secretary shall "be responsible for hiring and training personnel to provide security screening at all airports in the United States...." 49 U.S.C. § 114(e)(4).

¶ 3 The TSA was created in November 2001, and Congress allowed it one year, until November 19, 2002, to hire and train federal screeners.[1] During this one-year period Congress authorized the TSA to assume contracts that air carriers had with others to provide security screening.[2] The TSA assumed the air carriers' contract with Huntleigh for security screening at Will Rogers International Airport.

¶ 4 The TSA announced an incentive or bonus to be paid to security screeners. The bonus was incorporated into the contract between Huntleigh and the TSA, its amount to be determined at the end of the contract term when the federalization process was complete. The contract also provided that security screeners would be paid within thirty days of completion of work. Plaintiffs worked as screeners until the federalization process was complete at Will Rogers International Airport on November 10, 2002.

¶ 5 In March 2003, while the TSA was processing Huntleigh's invoices that included the bonuses, Plaintiffs filed their action in the District Court. They alleged that they had not received their bonuses, that Huntleigh had made fraudulent representations that they would receive bonuses, and they requested that a class action be certified by the court.

¶ 6 After the TSA approved the invoices in April 2003, it informed Huntleigh that it would audit the invoices, including those relating to employee bonuses. Although the audit was not complete, the TSA paid Huntleigh an amount on the contract. Huntleigh and the TSA continued to disagree on whether additional amounts were owed. The TSA later maintained that it had overpaid Huntleigh. Huntleigh claimed that the TSA owed Huntleigh 28.7 million dollars. No facts in the record show whether Huntleigh and the TSA have resolved their dispute.

¶ 7 Employees' filing in the District Court purports to show that in July 2003 the TSA told Huntleigh to pay the employee bonuses, and that Huntleigh then advanced more than $5 million of its own funds to pay for employ-

---

1. 49 U.S.C.A. § 44901 (West Supp.2004), (Historical and Statutory Notes, Deadline for Deployment of Federal Screeners).

2. 49 U.S.C.A. § 44901 (West Supp.2004), (Historical and Statutory Notes, Transition Provisions).

ee bonuses. This material also appears to show that in July 2003 TSA was stating publicly that it had paid the bonus money to Huntleigh, and that Huntleigh was stating publicly that TSA had *not* paid the bonus money to Huntleigh.

¶ 8 Huntleigh sought dismissal in the District Court and argued that (1) Employees were seeking to enforce a provision of a contract Huntleigh had with a federal agency (the TSA), (2) the TSA was an indispensable party, (3) the Tucker Act (28 U.S.C. §§ 1346, 1491) provided Employees with an exclusive remedy in federal courts, and (4) principles of federal preemption deprived the state court of jurisdiction. The District Court sustained the motion to dismiss. The Court of Civil Appeals affirmed the judgment and we granted certiorari.

## I. Standard of Review

¶ 9 In *Flick v. Crouch,* 1967 OK 131, 434 P.2d 256, the defendants' plea challenged the subject matter jurisdiction of a district court. We said that the plea went to the merits of the action when it was based upon an allegation that jurisdiction over a particular controversy was exclusively vested in a different court. *Id.* 434 P.2d at 261–262. As we discuss herein, one of Huntleigh's arguments is that Employees' claim is preempted by federal law and should be brought pursuant to the Tucker Act, 28 U.S.C. § 1491. This Act gives the Court of Federal Claims *exclusive* jurisdiction of non-tort claims in excess of $10,000 against the United States. Huntleigh, like the *Flick* defendants, argues that a court other than an Oklahoma District Court has subject matter jurisdiction.

¶ 10 The burden to show facts *relating* to the jurisdiction of an Oklahoma District Court does not always fall on a plaintiff. *Flick v. Crouch, supra.* The burden of proof as to any particular fact rests upon the party asserting such fact.[3] In the context of subject matter jurisdiction, whether a particular party must plead and prove a jurisdictional fact will depend upon whether the fact is part of a cause of action or part of a defense. Further, as we explained in *Flick,* contested jurisdictional facts may not be adjudicated on either a motion to dismiss or for summary judgment, and they must be adjudicated by the proper finder of fact for the proceeding. 434 P.2d at 262.[4]

¶ 11 Huntleigh did not challenge whether the allegations of the petition were sufficient to invoke subject matter jurisdiction of a district court, but supplied extra-petition facts in support of its argument that exclusive jurisdiction was in a different court. On appeal we treat Huntleigh's motion to dismiss as a motion for summary judgment. *Flick v. Crouch, supra.* When a court adjudicates a summary judgment motion a burden is placed on the movant in the sense that "all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party." *Head v. McCracken,* 2004 OK 84, ¶ 3, 102 P.3d 670, 674. An award of summary judgment is reviewed *de novo* on appeal, and this is a plenary, independent and non-deferential re-examination of the trial court's ruling. *Id.*

## II. Employees' Claim Is Not Preempted

¶ 12 Employees claim that Huntleigh promised to pay a bonus, and that this prom-

3. *Graves Farm Loan Inv. Co. v. Vance,* 1934 OK 412, 35 P.2d 896 (Court Syllabus); *Fifth Ave. Library Society v. Phillips,* 1913 OK 687, 136 P. 1076 (same). *See Board of County Commissioners of Marshall County v. Snellgrove,* 1967 OK 108, 428 P.2d 272, 276 (burden of proof rests upon the party having the affirmative as made up by the pleadings, and such party must prove every essential fact necessary to establish his cause of action or defense).

4. An Oklahoma District Court possesses unlimited original jurisdiction of all justiciable matters, except as otherwise limited by the Oklahoma and Federal Constitutions. *State ex rel. Southwestern Bell Tel. Co. v. Brown,* 1974 OK 19, 519 P.2d 491,

495. A federal court presumes that no jurisdiction exists absent an adequate showing by the party invoking jurisdiction because a federal court is a court of limited jurisdiction. *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir.1999). Thus, an allocation of a burden of proof in state court relating to a particular type of jurisdiction may, or may not, be analogous to federal court jurisprudence. *See, e.g., Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, n. 7, 890 P.2d 906, 910 (court discussed analogous federal and state standing principles and a plaintiff's burden to show standing).

ise occurred in the context of an employer/employee relationship. Huntleigh argues that Employees' claim is preempted because "federal law preempts state law claims" and that this Court should not allow "displacement of applicable federal law and federal courts' jurisdiction over federal contract claims by Oklahoma courts and Oklahoma contract law."

¶ 13 Congress may completely preempt a state-law cause of action and convert the state-law claim it into a federal claim. This was discussed in *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). The Court explained that it had found a complete preemption of certain state causes of action by the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 *et seq.*), and the Labor Management Relations Act, 1947 (29 U.S.C. § 185), *Beneficial Nat. Bank v. Anderson,* 539 U.S. at 7–8, 123 S.Ct. 2058. The state cause of action was preempted by federal statutes that "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* 539 U.S. at 8, 123 S.Ct. 2058. Huntleigh points to nothing in the Aviation Transportation Security Act that expressly provides Employees with federal remedies for Huntleigh's alleged breach of a contract with its employees. Huntleigh points to no language in that Act that expressly preempts state law.

¶ 14 Additionally, in the absence of an express congressional command of preemption, state law is pre-empted if it actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The High Court has said a conflict arises when "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Nothing in the record suggests that Huntleigh's compliance with the Aviation Transportation Security Act is a physical impossibility if its employees are allowed to bring an action for wages allegedly due and unpaid. Nothing in the record shows that objectives of Congress will be frustrated by allowing Huntleigh's employees to collect unpaid wages in an action in state court.

¶ 15 Huntleigh argues that state law may not supplement the Aviation Transportation Security Act because Congress thoroughly occupied the field of aviation transportation security. The presence of Congressional regulation in a field does not mean that all state law in the same field is preempted. For example, in *Pacific Gas and Elec. Co., supra,* the Court noted that although the federal government maintained complete control of the safety and "nuclear" aspects of nuclear energy generation, the states continued "to exercise their traditional authority over the need for additional generating capacity, the type of generating facilities to be licensed, land use, ratemaking, and the like." *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n,* 461 U.S. at 211–212, 103 S.Ct. 1713. Huntleigh has not cited to anything in the Aviation Transportation Security Act that negates the traditional role of state courts in providing a forum for actions in contract by employees against their employers for allegedly unpaid wages.

¶ 16 Huntleigh relies upon *Orelski v. Pearson,* 337 F.Supp.2d 695 (W.D.Pa.2004), where a former security screener was employed by NCS Pearson, a federal contractor, with a contract to hire approximately 80,000 new federal employees. He had accepted a conditional offer of employment as a federal screener, and then was dismissed from employment because a check of his criminal history revealed that he had been convicted of misappropriation of postal funds. The plaintiff brought an action alleging NCS Pearson employees represented that his employment by the federal government would not be affected by a criminal record.

¶ 17 The *Orelski* court explained that the Under Secretary of Transportation possessed unfettered discretion with regard to the hiring, and terms and conditions of employment of security screeners; and that, *notwithstanding any other provision of law*, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate and fix the compensation, terms, and conditions of employment of Federal Service. *Orelski v. Pearson*, 337 F.Supp.2d at 700. The federal court concluded that the plaintiff's state-law based claims were preempted. Plaintiff could not argue that the representations of the NCS Pearson employees were amendments to, or alterations of, the requirements of the TSA pursuant to state law.

¶ 18 In *Orelski* the preemption was applied to a claim against an independent federal contractor. The contractor had a contract to hire federal employees, and the terms and conditions of employment, including hiring, of federal employees were all controlled by federal law. *Orelski v. Pearson*, 337 F.Supp.2d at 703. NCS Pearson could not be held, pursuant to state-law contract principles, to possess the contractual authority to negate the requirements of federal law for the employees it was hiring to work *as federal employees*.

¶ 19 Huntleigh relies upon *Sharr v. Dept. of Transportation*, 247 F.Supp.2d 1208 (D.Or. 2003), where that court explained that NCS Pearson acted as an agent for the Department of Transportation when determining which Huntleigh employees qualified to be federal employees after the federalization process was complete. Our analysis of *Orelski* applies to *Sharr*, in that an alleged state-law claim for unpaid wages against Huntleigh for work performed prior to TSA federalizing the positions does not keep Huntleigh, as a federal contractor, from completing its TSA contractual obligations.

¶ 20 Huntleigh also relies upon *Huntleigh Corp. v. Louisiana State Bd. Of Private Sec. Examiners*, 906 F.Supp. 357 (M.D.La.1995). The Louisiana State Board of Private Security Examiners determined that Huntleigh was an employer of private security officers. Huntleigh argued that the state rules were preempted by the Airline Deregulation Act, 49 U.S.C. § 1305(a)(1), (ADA). Huntleigh prevailed and the court held that the state regulations were preempted. However, the court also explained a difference between an ADA preemption claim asserted to bar state regulation and one to bar the application of state contract law, and concluded that the former was preempted and the latter was not. *Huntleigh Corp. v. Louisiana State Bd., etc.*, 906 F.Supp. at 360, *citing, American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

¶ 21 In *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the High Court noted that state contract remedies are not always preempted. *Id.* 513 U.S. 219, 228–229, 115 S.Ct. 817, 130 L.Ed.2d 715. But private contractual obligations may be preempted when their enforcement would frustrate the enforcement of the federal law at issue. *Id.* 513 U.S. at 229, n. 6, 115 S.Ct. 817. Further, some state-law principles of contract law might be preempted to the extent they seek to effectuate the State's public policies, rather than the contractual intent of the parties. *Id.* 513 U.S. at 233, n. 8, 115 S.Ct. 817. Nothing before us shows how the enforcement of federal law is frustrated by Employees' contract claim filed after expiration of the contract period. Further, nothing before us shows how the enforcement of federal law is frustrated by a claim that is based upon an allegation that the federal government previously performed its contractual obligation to pay Huntleigh. Nothing is before us showing how the proceeding in state court will or could effectuate a state policy that is contrary to the contractual intent of Employees and Huntleigh.

¶ 22 In *American Airlines, Inc. v. Wolens*, the High Court recognized a *federal policy* favoring the enforcement of private agreements. *Id.* 513 U.S. at 230, 115 S.Ct. 817. Enforcement of an employment agreement between Huntleigh and its employees is consistent with a general federal policy favoring enforcement of private agreements. The contract between Huntleigh and TSA, a federal agency, has characteristics of a public nature. However, the relationship between Employees and Huntleigh and the right Em-

ployees seek to enforce are more characteristic of a private dispute. This is so because the Huntleigh/TSA agreement has expired; Huntleigh will no longer be a federal contractor providing those services since the security screener positions have been federalized; and, according to the allegations of Employees, the federal government previously paid Huntleigh pursuant to the Huntleigh/TSA contract. *Huntleigh Corp. v. Louisiana State Bd., etc., supra, and American Airlines, Inc. v. Wolens, supra* do not support Huntleigh's argument for affirming the District Court judgment.

¶ 23 Huntleigh argues that state law claims and remedies will conflict with federal law, that state law could "create conflicting obligations for Huntleigh USA if its distribution plan of July 2003 is deemed untimely even though authorization did not occur until April 2003." Huntleigh's "offer" relied upon by Employees states that "Once the funds have been received from the TSA, HUSA will issue the bonus checks to all who have qualified." The "offer" does not appear to be based on authorization in April 2003, but Huntleigh's actual possession of the bonus funds from the federal government. Employees maintain that their action is based upon Huntleigh having received the bonus funds and withholding payment. Nothing in the record suggests how this claim could possibly keep Huntleigh, as a federal contractor, from completing any of its contractual obligations to the federal government, including any conditions the federal government has placed on Huntleigh to receive the funds to pay the bonuses.

¶ 24 The appellate record indicates that Huntleigh's government contract for supplying security screeners came to an end because the position of security screeners was federalized. The imposition of contractual liability upon Huntleigh in the form of requiring payment of the bonuses, or liability for allegedly late payments, to former employees does not appear to affect the interests of the United States in performing present or future security screening, or to affect any existing federal contracts. *See, e.g., Boyle v. United Technologies Corp.,* 487 U.S. 500, 506–507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), (explaining that imposition of liability on government contractors could affect the interests of the United States); *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 28 –29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), (uniform national rule is applied when necessary to further the interests of the Federal Government). We conclude that Employees' claim is not preempted by the Aviation Transportation Security Act.

### III. Tucker Act Remedies

¶ 25 Huntleigh asserts the bonuses are part of a federal contract ultimately funded by the TSA from the U.S. Treasury, and the Tucker Act provides exclusive jurisdiction for claims arising under federal contracts. The Tucker Act, 28 U.S.C. § 1491,[5] gives the Court of Federal Claims *exclusive* jurisdiction over non-tort claims in excess of $10,000 against the United States. *Clinton v. Goldsmith,* 526 U.S. 529, 539, n. 13, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). The Little Tucker Act, 28 U.S.C. § 1346(a)(2),[6] gives

---

**5.** 28 U.S.C.A. § 1491(a)(1) (West Supp.2004), states:

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be

considered an express or implied contract with the United States.

**6.** 28 U.S.C.A. § 1346(a)(2) (West 1993), states:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for

U.S. District Courts jurisdiction for claims $10,000 or less against the United States. *Clinton v. Goldsmith,* 526 U.S. at 540, n. 14, 119 S.Ct. 1538. Huntleigh argues that the Tucker Act may be used by Employees to bring an action in the Court of Federal Claims.[7] Huntleigh argues that Employees possess third party beneficiary status and such status is sufficient to recover their bonuses in the Court of Federal Claims.

▉ ¶ 26 Generally, in a proceeding before the Court of Federal Claims a plaintiff must show privity of contract with the federal government. In a proceeding before the Court of Federal Claims individuals may establish privity of contract if they are intended third-party beneficiaries of a contract with the United States. *Chancellor Manor v. U.S.,* 331 F.3d 891, 901 (Fed.Cir.2003). They "must demonstrate that the contract not only reflects an express or implied intention to benefit the party, but that it reflects an intent to benefit the party directly." *Id.* However, Huntleigh's argument is not relevant to Employees' claim *against Huntleigh.* For example, in *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279 (Fed.Cir.1999), the court explained third-party beneficiary suits, and said that: "However, the common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity with the federal government." *Id.* 194 F.3d at 1289, explanation added. Employees do not seek to stand in the shoes of Huntleigh, the party within privity with the federal government, but in their own shoes.

¶ 27 Third-party beneficiary status will not provide Employees with any remedy against Huntleigh in the Court of Federal Claims. In *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), the Court said that a suit against private parties may not be maintained in the Court of Federal Claims. 312 U.S. at 588, 61 S.Ct. 767. The Court of Federal Claims has consistently declined to exercise jurisdiction in disputes between private parties.[8] The High Court has recently observed that "... we have held that suits against the United States under the Tucker Act, ... which can of course be brought only in federal court, ... cannot include private defendants." *Finley v. U.S.,* 490 U.S. 545, 552, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), (citations omitted).

▉ ¶ 28 It is correct that in certain circumstances a third party may be summoned to appear before the Court of Federal Claims. Such would occur, for example, (1) when the federal government has disbursed funds to a third party under a mistake of law or fact, and (2) the unpaid plaintiff prevails against the federal government in the Court of Federal Claims, and then, (3) the federal government is entitled to recover against the third party in the action brought by the plaintiff against the federal government. *Bird v. U.S.,* 51 Fed.Cl. 536, 543–544 (Fed.Cl. 2002). The Court of Federal Claims has

---

liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

7. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516, changed the name of the former United States Claims Court to the United States Court of Federal Claims. *Winstar Corp. v. U.S.,* 64 F.3d 1531, 1534 n. 2 (Fed.Cir.1995). *See Hercules Inc. v. U.S.,* 516 U.S. 417, 423, n. 5, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996), (noting new name for the Court of Federal Claims).

8. *Nicholson v. U.S.,* 29 Fed.Cl. 180, 185 (Fed.Cl. 1993), ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained."); *Lemelson v. U.S.,* 8 Cl.Ct. 789, 791 (Cl.Ct.1985), ("It is clear that this court has never had jurisdiction to decide a controversy between private parties."); *Stephenson v. U.S.,* 58 Fed.Cl. 186, 190 (Fed.Cl.2003), ("... the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual."). *Cf. Manufacturers Nat. Bank of Detroit v. Brownstown Square Apartments,* 491 F.Supp. 206, 209 (E.D.Mich.1980), (transfer of claim involving private parties to the United States Court of Claims would be a transfer to a court that would have no subject matter jurisdiction over the lawsuit).

rejected the argument that it may adjudicate all claims possessed by a plaintiff, defendant/federal government, and a third party. See *Bird v. US.*, 51 Fed.Cl. 536, where the court said that it had previously rejected the argument that it should settle all claims of a plaintiff, defendant/government, and third party; and explained that the third party was discharged from the proceeding in *Christy Corp.* when that party was not a surety, assignee, or indemnifier with respect to the contract between the plaintiff and the defendant/government. *Bird*, 51 Fed. Cl. at 544, n. 10, *explaining, Christy Corp. v. United States*, 181 Ct.Cl. 768, 387 F.2d 395 (1967).

¶ 29 Huntleigh's characterization of Employees' claim is simply another way of asserting that TSA, and not Huntleigh, has a legal duty to timely pay bonuses to Huntleigh's employees. No legal argument before us shows that Employees have a claim against Huntleigh in the Court of Federal Claims. Nothing in the record before us suggests that Huntleigh is, or will be, a plaintiff before the Court of Federal Claims seeking funds for allegedly unpaid security screener bonuses with a legally cognizable right of Employees to appear therein. Employees argue that the federal government has fulfilled its obligation, that they are not seeking any relief against the federal government, and that a Tucker Act lawsuit is inap-

propriate. We agree with Employees that a Tucker action is inappropriate when no relief against the federal government is sought. *Finley v. U.S., supra; U.S. v. Sherwood, supra.*

## IV. The TSA as an Indispensable Party

 ¶ 30 Huntleigh argues that dismissal of Employees' action is proper because the TSA, a federal agency, is an indispensable party that may not be joined in state court. We agree that the United States is immune from suit in a state court unless it consents to be sued. *Double LL Contractors, Inc. v. State ex rel. Oklahoma Dept. of Transp.*, 1996 OK 30 918 P.2d 34, 42. *See United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (the United States, as sovereign, is immune from suit save as it consents to be sued). However, we disagree that the TSA is an indispensable party.

¶ 31 Joinder of persons needed for a just adjudication of a controversy is set forth in the Pleading Code at 12 O.S.2001 § 2019.[9] Huntleigh argues that the TSA is a "person needed for just adjudication" because its absence may "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed

---

**9.** *12 O.S.2001 § 2019:*

Joinder of persons needed for just adjudication
 A. PERSONS TO BE JOINED IF FEASIBLE. A person who is subject to service of process shall be joined as a party in the action if:
 1. In his absence complete relief cannot be accorded among those already parties; or
 2. He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
 a. as a practical matter, impair or impede his ability to protect that interest, or
 b. leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
 If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff.
 B. DETERMINATION BY COURT WHENEVER JOINDER NOT FEASIBLE. If a person as described in paragraphs 1 and 2 of subsection A of this section cannot be made a party, the court

shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:
 1. To what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;
 2. The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
 3. Whether a judgment rendered in the person's absence will be adequate; and
 4. Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 C. PLEADING REASONS FOR NONJOINDER. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in paragraphs 1 and 2 of subsection A of this section who are not joined and the reasons why they are not joined.
 D. EXCEPTION OF CLASS ACTIONS. This section is subject to the provisions of Section 23 of this act.

interest." See *12* O.S.2001 § 2019(A)(2)(b). In support Huntleigh argues that: "Plaintiffs' claims to interest and attorney fees will cause review of the TSA's own performance of the contract including the changing of the contract, authorizing the amount of the bonuses and whether the timing of the TSA's actions excuses Huntleigh USA's performance." Huntleigh's Motion to Dismiss.

¶ 32 Employees' claim is based upon an allegation that Huntleigh already has received the bonus funds from the TSA. Huntleigh maintains that these funds were not paid and that it is negotiating with the TSA for additional funds. We agree with Huntleigh that Employees seek a judgment against Huntleigh based upon an allegation that Huntleigh has already received the bonus funds from the TSA. We also agree with Huntleigh that the TSA *may* provide it with additional funds, and this result may be inconsistent with Employees' allegation. We agree with Huntleigh that it may not obtain complete relief in the absence of the TSA since Huntleigh's claim against the TSA seeks the same bonus funds that Employees seek from Huntleigh.

¶ 33 Joinder of the TSA is not feasible, so a court must "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." 12 O.S.2001 § 2019(B). The court considers four factors:

1. To what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;

2. The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

3. Whether a judgment rendered in the person's absence will be adequate; and

4. Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.* § 2019(B)(1)-(4).

¶ 34 When federal courts apply the similar Federal Rule of Civil Procedure, Rule 19(b),[10] they do not consider these four factors to be exclusive. *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1289 (10th Cir.2003). The four factors "are not rigid, technical tests, but rather guides to the overarching equity and good conscience determination." *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 774 (D.C.Cir.1986), *quoting, Cloverleaf Standardbred Owners v. National Bank*, 699 F.2d 1274, 1279 n. 11 (D.C.Cir.1983), (internal quotation marks omitted). In *Davis* the court explained these four factors:[11]

> In *Provident Tradesmens Bank and Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the Supreme Court described the Rule 19(b) factors as representing four distinct interests: (1) "the interest of the outsider whom it would have been desirable to join," *id.* at 110, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936; (2) the interest of the defendant in avoiding "multiple litigation, . . . inconsistent relief, or sole responsibility for a liability he shares with another," *id.*; (3) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies[,] . . . settling disputes by wholes, whenever possible . . . ." *id.* at 111, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936; and (4) the plaintiff's interest in having a forum in which to present the

---

10. Fed.R.Civ.Pro., Rule 19(b):

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions

in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

11. After *Provident Tradesmens Bank and Trust Co., supra,* Rule 19 was amended in 1987, and according to the Advisory Committee Note on the 1987 Amendments: "The amendments are technical. No substantive change is intended." 28 U.S.C.A. Fed.R.Civ.Pro., Rule 19 (West 1992).

**1080**

claims, *id.* at 109, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936.

*Davis ex rel. Davis v. U.S.*, 343 F.3d at 1290.

¶ 35 A judgment rendered in the absence of the TSA will not prejudice the TSA. The TSA, as a federal agency, is not bound by a judgment in a state court adjudicating its obligations unless the federal government has consented to the action. Prejudice to Huntleigh could arise from a judgment in state court that is based upon a finding that Huntleigh previously received the bonus funds, while Huntleigh's claim is being reviewed by the TSA, and thus creating the possibility of conflicting obligations. Neither party addresses how a potential judgment against Huntleigh in state court could be structured so as to be less prejudicial to Huntleigh. Neither party addresses the interests of courts and the public in avoiding multiple litigation in these circumstances.

¶ 36 Huntleigh's requested relief will leave employees without a judicial forum for their claim. However, allowing the Employees' claim to proceed in the absence of the TSA will not necessarily foreclose Huntleigh from obtaining the relief it seeks from the TSA. Allowing Employees to pursue their claim results in minimal prejudice to Huntleigh. We conclude that equity and good conscience are upheld when both parties are allowed to pursue their claims.

¶ 37 The opinion of the Court of Civil Appeals is vacated, the judgment of the District Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

¶ 38 ALL JUSTICES CONCUR.